## WARD v. JOSLIN.

### (Circuit Court, D. New Hampshire. March 8, 1900.)

### No. 428.

1. CORPORATIONS — INDIVIDUAL LIABILITY, OF STOCKHOLDERS — TRANSFER OF STOCK.

The transfer by a stockholder of a corporation of his stock to another, without consideration, in view of the anticipated insolvency of the corporation, and at a time when it was in fact insolvent, although still a going concern, is not such a bona fide transfer as will relieve such stockholder from his statutory liability to creditors of the corporation.

2. SAME—KANSAS CONSTITUTION.

Under the provision of the Kansas constitution that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder," the liability of the stockholder is contractual, and the term "dues" is to be construed as applying only to claims resulting from the legitimate and contemplated business of the corporation, and cannot be extended to a claim arising out of a guaranty made on behalf of the corporation, by its officers, without authority, and where the stockholder sought to be charged had no knowledge that they were assuming to exercise such authority.

3. SAME — SUIT TO CHARGE STOCKHOLDER — CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.

While a judgment against a corporation may be accepted, under the statutes of Kansas, as conclusive, in an action against a stockholder to charge him with individual liability as to the amount of the debt and the liability of the corporation, it is not conclusive upon the stockholder that the claim is one of the nature for which he is rendered individually liable by the constitution.

This was an action by a judgment creditor of a Kansas corporation to charge defendant with individual liability as a stockholder.

William R. Bigelow, for plaintiff.
J. S. H. Frink, for defendant.

ALDRICH, District Judge.    Sitting as judge and jury in this case, I first make my findings of fact, and then rule upon questions of law:

I find, as a matter of fact, that the defendant on June 9, 1894, owned 100 shares, of the par value of $50 each, in the Western Investment, Loan & Trust Company, a Kansas corporation; that on that day the trust company, as a matter of fact, was insolvent; and that the defendant, suspecting the financial condition of the trust company was unsound, and apprehending litigation, and having in mind the stockholder's statutory liability, without consideration transferred the stock to Frederick E. Kingsbury, his grandson, who was a young man, but not responsible, in the sense of having any considerable, if any, attachable property.    And, so far as it is a question of fact, I find that the transfer was not such a bona fide transfer as to relieve the defendant from his individual liability as a stockholder, if he were otherwise liable.    I also find that a new certificate was issued to Kingsbury, and that the transfer of such stock was noted on the stub of the certificate book, but that such transfer was not noted on the transfer book provided by the company for such purpose, and that the neglect to so enter it was the neglect of the bank officers, and not of the defendant.    I find, as a matter of fact, upon the evidence contained in the record, and upon the arguments, that Ward's claim against the trust company was upon a guaranty, given upon a valuable consideration, of the payment of certain promissory notes from one third party to another, and was not a guaranty of the payment of securities negotiated by the company.    I find that the plaintiff brought an action at law in the district court of Smith county, in the state of Kansas, against the trust company, on December 23, 1892, on these guaranties, by a writ served upon the president of said corporation, and on March, 1893, recovered judgment thereon against the company for $9,787.50, with interest at 12 per cent.; and, as shown in the record, on December 11, 1893, $4,924.75 was paid thereon, and on September 14, 1896, an execution issued for the balance, and was returned wholly unsatisfied, as shown by the officer's return printed in the record.    I also find that the trust company was not a railway, religious, or charitable corporation, and the business which the corporation was authorized to do was "to buy and sell personal property, including stocks, bonds, bills, notes, real and chattel mortgages, and choses in action of every kind and description, and to transact the business of a loan and trust company"; that some time after the organization of the company, and before the defendant became a stockholder, the directors thereof resolved "that the president and secretary of the company be, and they hereby are, authorized to guaranty the payment of all securities negotiated by the company, by indorsing upon any such security one of the following forms of a guaranty,"—and the resolution of the corporation and the forms of guar-

anties, printed in the record, are referred to and made a part of the findings. Ascertaining the relations of the parties under the contract which resulted from the Kansas constitution and the statutes and the defendant's ownership of stock, I find, so far as it is a question of fact, that the dues to be secured by the superadded stockholder's liability were such as were within the reasonable and proper scope of the business as contemplated by the parties, and that a guaranty of this character was not intended by the defendant stockholder, and was not contemplated by the Kansas constitution as a due or a debt within such scope. I also find, so far as it is a fact, that it was not within the scope of the resolution which assumed to authorize the president and secretary to guaranty securities negotiated by the company, and there is no evidence that the defendant stockholder had knowledge that the company was assuming, through its president and secretary, to guaranty the payment of claims not negotiated by itself; and, there being no evidence of notice, I find, as a matter of fact, that he was not aware of it. I also make a general finding for the defendant.

Upon the findings as to the transfer, I rule that it was not such a bona fide and complete transfer as to relieve the stockholder from his individual contractual liability, and the defendant excepts. Still, upon all the foregoing findings, I order judgment for the defendant. The relations of the parties are contractual, and the term "dues," in the Kansas constitution, ought to be accepted as applying only to claims resulting from the legitimate and contemplated business of the corporation or company, such as arise in respect to transactions within the reasonable scope of the business contemplated; and, as between the creditor and the stockholder, they should not be extended to claims which arise from the transaction of unauthorized business. While, under paragraph 1192 of the General Statutes of Kansas, providing the remedy, a judgment against the corporation may be accepted, under proper limitations, as conclusive, in a proceeding against the stockholder as to the amount and the liability of the company upon claims in respect to transactions within the contemplation of the constitution and of the parties to the contract, it should not be accepted as conclusive upon the question of the nature and character of the claims, for the reason that paragraph 1192 is only intended to give a remedy to the creditor in respect to the kind of claims contemplated by the constitution. The judgment on this ground is accepted as conclusive, because it relates to a corporate affair, and because the stockholder's interests are supposed to be represented by the officers of the bank in respect to affairs within the scope of its contemplated, legitimate, and authorized transactions. It would be going too far to say that the stockholder should be concluded as to the question whether the foundation and nature of the claim were within the fair intendment of the constitutional provision and the contract between the parties, upon the ground of representation, for the reason that such a question is not one which, in the natural and usual course of litigation between the bank and the creditor, would be presented or adjudicated. The contract, under the constitution, is between the creditor and the stockholder, and the bank, in a proceeding against it

by the creditor to which the stockholder was not a party, would neither be called upon, nor be expected or allowed, to present such a question for adjudication. The amount due the creditor from the bank in respect to transactions within the scope of its banking business would naturally be presented and adjudicated. Quite likely, decisions may be found which say that "dues" mean indebtedness, and perhaps liabilities, and technically this may be so; but, looking at the substance of the contract, is it reasonable to say that the constitution of Kansas contemplated a contract which should bind a stockholder in respect to unauthorized and venturesome transactions outside of the scope of the business generally transacted by loan and trust companies? The amount of the bank's indebtedness or its liability, on a question of this kind, could and would be put in issue in a suit between the creditor and the corporation; but whether such a due is within the scope of the contract between the creditor and the stockholder, under the constitution, would not and could not be put in issue in a suit between a creditor and the bank to which the stockholder is not a party. A case might be supposed where the bank would be liable, and the stockholder not liable, under the constitutional or statutory contract. The rule of res adjudicata only extends to such questions as are actually litigated, and, under certain circumstances, to such as might be litigated. In the original case against the bank by the creditor, the question as to the character of the claim —whether it was one contemplated by the contract between the creditor and the stockholder—was neither presented nor litigated, nor was it in a situation to be presented or litigated, while in the case now under consideration the question is not whether the claim was an indebtedness or a due for which the bank was liable, which question was litigated and concluded by the judgment, but a question whether it was the kind of a debt or due which the statutory contract between the creditor and stockholder covered or contemplated. This precise question, as has been said, was not presented—could not have been presented—in that case, and therefore is not concluded. It is for this reason that Richmond v. Irons, 121 U. S. 27, 61, 7 Sup. Ct. 788, 30 L. Ed. 864, and Schrader v. Bank, 133 U. S. 67, 77, 10 Sup. Ct. 238, 33 L. Ed. 564, make a distinction between judgments upon claims in the ordinary course of the corporate business, and claims arising outside of such ordinary and usual course,—in other words, a distinction between claims within the scope of the corporation and its business, and claims ultra vires the corporation and its business. It is true, as claimed by the plaintiff, that the alleged due in the Schrader Case was not a guaranty, but the point is not that the contingent liability in that case was the same as the contingent liability here, but that there was a judgment which it was claimed was conclusive, and, in view of the fact that the record disclosed that the debt or liability was of a kind not contemplated by the constitutional or statutory contract, that the judgment against the corporation was not treated as conclusive; thus admitting of an exception to the general rule that a judgment against the corporation is conclusive. There is no question of estoppel here, upon the ground that the stockholder was a part of the bank that did the business, and therefore cannot object

that the bank had no right to do the business. Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007, was a case where it was held that the bank itself was not estopped from setting up its unauthorized holdings; and, if the bank was not estopped, stockholders, upon principle, should not be estopped. To this ruling plaintiff excepts.