EVANS v. NELLIS.

(Circuit Court, N. D. New York. May 23, 1900.)

1. CORPORATIONS—KANSAS STATUTE RELATING TO LIABILITY OF STOCKHOLDERS —CONSTITUTIONALITY.

The Kansas act of January 11, 1899, which repealed the prior statutes for carrying into effect the provision of the state constitution securing dues from corporations by an additional liability of stockholders equal to the amount of stock owned by each by giving any judgment creditor of a corporation, on return of an execution nulla bona, the right to enforce payment of his judgment by an action against any stockholder to the extent of such stockholder's additional liability, and which substituted for such statutes provisions making such additional liability of stockhold-

ers an asset of the corporation, to be collected in full by a receiver, and applied to the payment of the costs and expenses of the receivership, and to all the debts of the corporation ratably, any excess to be returned to the stockholders, as a retroactive measure is invalid as impairing the obligation of contracts, inasmuch as it deprives both the judgment creditor and the stockholder of substantial rights arising by contract under the former statute,—the former by depriving him of the right to enforce the additional liability of any particular stockholder for his own exclusive benefit, and by diverting a portion, and perhaps all, of the amount collected from such stockholder to the payment of costs and expenses which are not "dues of the corporation," and of claims of simple contract creditors, to which it was not applicable under the former statute; the latter by depriving him of the right, in an action against him, to interpose any defense he might have against the judgment creditor suing by subjecting him to suit for the full amount of additional liability imposed by the constitution, regardless of the amount of the judgment indebtedness of the corporation, by which such liability was previously limited, and by applying the sum so collected from him to the payment of matters for which he was not liable under the constitution or the statute in force when he became a stockholder.

**2. SAME.**

The defense that such act is unconstitutional as impairing the obligation of contracts made by a stockholder in a suit brought against him thereunder by a receiver cannot be avoided by the receiver by consenting that recovery shall be limited to the amount of the judgment indebtedness of the corporation, since the act repealed the statute so limiting the defendant's liability, leaving no law in force under which it can be so limited, and the act itself gives the receiver no authority to consent to such limitation, but requires him to "immediately institute proceedings against all stockholders to collect  *   *   *  the additional liability of such stockholders equal to the par value of the stock held by each," and provides that such collections "shall be held for the benefit of all creditors."

At Law. Action to recover stockholder's additional liability of $60,200 under the constitution and laws of Kansas.

Facts.

The plaintiff is a citizen of Kansas and sues as receiver of the Interstate Loan & Trust Company, a corporation organized under the laws of that state July 22, 1885. The defendant is a citizen of New York, and was and is the owner of 602 shares of the capital stock of said loan and trust company of the total par value of $60,200. On the 31st of December, 1897, one E. B. Crissey recovered a judgment against the said company for $6,792.20 and on the 5th of June, 1899, another judgment was recovered by the same plaintiff for $5,289.50. In 1896 one Hannah G. Streeter recovered a judgment against the company upon which upwards of $2,000 is still due. Upon each of the three judgments an execution was duly levied and returned unsatisfied. In addition to these judgments there is a claim against the said company of $500 and interest, not reduced to judgment. On the 9th of June, 1898, the plaintiff was duly appointed receiver of the said company and subsequently by order of the court was directed to invoke the provisions of sections 14 and 15 of the Kansas statute, published January 11, 1899. These sections are as follows:

"Sec. 14. That section 32, chapter 23, of the General Statutes of 1868, be and the same is hereby amended to read as follow: Sec. 32. If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property upon which to levy such execution, such corporation shall be deemed to be insolvent, and upon application to the court from which said execution was issued, or to the judge thereof, a receiver shall be appointed, to close up the affairs of said corporation. Such receiver shall immediately institute proceedings against all stockholders to collect unpaid subscriptions to the stock of such corporation, together with the additional liability of such stockholders equal to the par value of the stock held by each. All collections made by the receiver shall be held for the benefit of all creditors,

and shall be disbursed in such manner and at such times as the court may direct. Should the collections made by the receiver exceed the amount necessary to pay all claims against such corporation, together with all costs and expenses of the receivership, the remainder shall be distributed among the stockholders from whom collections have been made, as the court may direct; and in the event any stockholder has not paid the amount due from him the stockholders making payment shall be entitled to an assignment of any judgment or judgments obtained by the receiver against such stockholder, and may enforce the same to the extent of his proportion of claims paid by them.

"Sec. 15. That section 46, chapter 23, of the General Statutes of 1868, be and the same is hereby amended to read as follows: Sec. 46. The stockholders of every corporation, except railroad corporations or corporations for religious or charitable purposes, shall be liable to the creditors thereof for any unpaid subscriptions, and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be considered an asset of the corporation in the event of insolvency, and to be collected by a receiver for the benefit of all creditors."

The act of January 11th repealed sections 6, 9, 24, 32, 41, 44 and 46 of the Kansas General Statutes of 1868. Sections 32 and 44, so repealed, provided as follows:

"Sec. 32. If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

"Sec. 44. If any corporation, created under this or any general statute of this state, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and if judgment be rendered, and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from property of each stockholder, respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved."

The provisions of the constitution of Kansas applicable to this controversy are as follows:

Article 12, § 1. "The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

Article 12, § 2. "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

Section 10, art. 1, of the constitution of the United States provides that: "No state * * * shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts."

The principal defenses relied upon are:

First. That the act of January 11, 1899, in so far as it attempts to alter or impair rights existing and settled at the date of its passage, is in contravention of the constitution of the United States and, to that extent, void. Sec-

ond. That the cause of action is barred by the statute of limitations. Third. That a receiver appointed by the courts of Kansas cannot sue in this jurisdiction.

L. A. Stebbins and George Lawyer, for plaintiff.
Andrew J. Nellis, pro se.

COXE, District Judge. The Interstate Loan & Trust Company was organized in 1885. The defendant became a stockholder in 1889. The first judgment was recovered against the company in 1896 on which $2,000 is still due. The second judgment was recovered in 1897 and execution was returned unsatisfied in January, 1898. The plaintiff was appointed receiver of the company in June, 1898. During this time and until January, 1899, when the act giving the receiver a right to recover the additional liability of stockholders was passed, the General Statutes of 1868 of Kansas were in force. In order to ascertain the effect of the subsequent legislation it is necessary to understand what were the rights of the parties when that legislation took effect. Section 32 of the statutes of 1868 provided that if an execution were returned nulla bona against a corporation an execution might issue by order of the court against any of the stockholders to an extent equal in amount to the amount of stock owned by him, or the plaintiff in the execution might proceed by action to charge the stockholders with the amount of his judgment. On the 6th of January, 1898, therefore, the plaintiffs in the Crissey and Streeter suits had a right of action against the defendant, but only for the amount of their judgments. Any defense by way of counterclaim or set-off which the defendant had against Crissey or Streeter was available to him in such action. By section 44 he was given an action of contribution against the other stockholders, so that had he been required to pay the Crissey and Streeter judgments he could have compelled the other stockholders to pay their proportionate shares.

In the recent decision of Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, Adv. S. U. S. 477, 44 L. Ed. ——, the supreme court has settled most of the vexed questions regarding the organic and statute law of Kansas as it existed prior to the amendments of 1899. The following propositions may be deemed decided:

First. The words of the Kansas constitution providing that "dues from corporations shall be secured by individual liability" are not merely directory to the legislature but of themselves declare the stockholders' liability and to this extent are self-executing.

Second. The constitution and the statutes must be taken together as forming one body of law, the statutes prescribing the mode of enforcing the constitutional liability. "Whatever else may be said about the remedy it is direct, certain and available to every creditor of a corporation, and leaves to the stockholders the adjustment between themselves of their respective individual shares of the corporate obligations."

Third. The liability of the stockholder, though statutory in its origin, is contractual in its nature. In other words, each of the stockholders entered into a contract, authorized by statute, with each

other and with the creditors of the corporation that debts established by judgment against the corporation might be collected of them to an amount equal to the amount of their stock provided there was no corporate property upon which to levy. They also agreed that one stockholder paying such judgment might have contribution from all the others.

Applying the law of the Whitman Case directly to the facts now before the court, it will be seen that the defendant was only under obligation to pay the Crissey and Streeter judgments and such other debts as were reduced to judgment. If he had a defense against any of these judgment creditors he could assert it. If he were required to pay he could himself compel other stockholders to contribute. Having paid all judgment creditors his obligation ceased. Hoyt v. Bunker, 50 Kan. 574, 32 Pac. 126. On the other hand Crissey and Streeter were vested with certain important and valuable rights under the contract between them and the stockholders. They as individuals could enforce their judgments against any stockholder wherever found. They were not called upon to share the amount so recovered with simple contract creditors or to pay any part thereof to a receiver or as costs and fees of the officers of the court. If one of these judgment creditors were the first to sue a solvent stockholder whose liability was equal to the amount of the judgment his debt was safe. This, then, was the situation when the law of 1899 went into operation. The new law wrought a sweeping and radical change. New liabilities are created and new remedies are provided. Section 23, as amended, provides for the appointment of a receiver upon an execution being returned nulla bona. The receiver so appointed shall close up the affairs of such corporation and shall immediately institute proceedings against all the stockholders to collect unpaid subscriptions and the additional liability. The money thus collected shall be held for the benefit of all the creditors and shall be used under the direction of the court to pay the costs and expenses of the receivership and all claims against such corporation. Any judgment obtained by the receiver against a stockholder who has not paid the amount due from him may be assigned to the stockholders who have paid and enforced by them against the delinquent stockholder for his proportionate amount. Section 46, as amended, provides that the stockholders shall be liable to the creditors for unpaid subscriptions and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be an asset of the corporation to be collected by a receiver for the benefit of all the creditors. Under the former law the stockholder's additional liability was an obligation to pay the judgment creditor who was unable to collect his debt from the corporation. Under the present law this liability is an asset of the corporation for the benefit of all the creditors. Under the former law the right to collect his judgment rested with the judgment creditor. He could act immediately. Nothing but his own laches could impair this right. Under the latter law the judgment creditor has no advantage over the most negligent and supine contract creditor. All alike must trust to the discretion of the receiver; if he fails in duty the debt of the

judgment creditor is lost. In the one case the entire indebtedness of the stockholder was applied without diminution upon the judgment. In the other case the entire amount collected may by order of the court be devoted to the payment of the receiver's commissions, costs and expenses. Under the former law the stockholder could avail himself of any defense, counterclaim or set-off he might have against the pursuing creditor. These defenses no longer exist. Under the former law, when he had paid the judgment creditors the liability of the stockholder ended; now he must pay the entire amount to the receiver even though it be twice the amount necessary to pay the corporation's debts. Whether any of the balance be returned or not depends largely upon the economy, prudence and honesty of the receiver. In short, the new law destroys, absolutely, all rights which the judgment creditor, qua a judgment creditor, possessed; takes away all right of independent action and compels him to share pro rata with all the creditors. As to the stockholder, it deprives him of defenses which would defeat the former action, compels a full payment when a partial payment was oftentimes sufficient and devotes the amount recovered to the payment of obligations not mentioned in the former statute. It is not difficult to suppose a case where a stockholder absolutely safe from pursuit under the former act may be financially ruined under the present act. For instance, where a stockholder was sued for, say $10,000, by the only judgment creditor. If the judgment creditor owed the stockholder the sum of $10,000 it is manifest that he could not recover. Or, assume a situation where the entire amount recovered is consumed in paying the expenses of the receivership. In the first of these instances the receiver takes money which could not be collected under the former act; in the second, he applies the money collected to the payment of obligations which are created for the first time by the act of 1899, and which are not "dues from corporations." Ward v. Joslin (C. C.) 100 Fed. 676. It is true that under the prior statute in certain circumstances an equal amount might be recovered, but the stockholder might discharge his entire obligation by paying much less than the full amount. Under the present law his liability is increased by compelling him to pay the full amount and by applying it in payment of an entirely new class of obligations.

Since the trial of this action the supreme court of Kansas, in the case of Woodworth v. Bowles, 60 Pac. 331, has declared unconstitutional similar provisions of the Kansas statute relating to the liability of stockholders in banks. Section 55 of chapter 47 of the act of 1897, provides that the receiver shall, after the expiration of one year, institute the proper proceedings in the name of the bank for the collection of the liability of the stockholders to be distributed pro rata among the creditors. No action by creditors against stockholders shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to begin the action as required by law. The court held that if the statute were given a retroactive construction it was invalid because it deprived creditors of their right to maintain proceedings against the stockholders or, at least, postponed that right for a year. The court says:

"The act of 1897 does not assume to abrogate the contract or relieve the stockholder from liability, but it does assume to do two other things: First, to suspend for one year the pursuit by the creditor of the special remedy afforded by the laws in existence at the time of the making of the contract; and, second, to deprive the creditor of such remedy altogether if the receiver at the end of the year should institute an action for him and for the other creditors, in which last-mentioned case the fund collected by the receiver is to be distributed pro rata between all the creditors. * * * If, however, the new enactment, although not designed to effect the substantial right, does nevertheless embarrass or substantially delay the creditor in the collection of the debt, it will be held to have impaired the obligation of the contract. We deem section 55 of the law of 1897, in its application to existing contracts between creditors and stockholders, to be an enactment of the latter kind. * * * If the receiver should institute an action and collect the liability, even though every stockholder should be solvent and should discharge his liability in full, the creditor might, nevertheless, not receive full payment of his claim. He must share with other creditors. * * * Vigilance and diligence on the part of a creditor in the pursuit of one or the other of his remedies in one or another of the contingencies stated, might avail to secure the payment of his claim in full. Under the statute as it now exists, vigilance and diligence may avail nothing."

It is thought that the logic of this opinion when applied, in similar circumstances, to the law of 1899 in its retroactive aspect, must result in a similar judgment. In Bronson v. Kinzie, 1 How. 311, 11 L. Ed. 143, the supreme court decided that where a mortgage contained a power to the mortgagee to sell on breach and thereby pay the debt, a subsequent law giving the mortgagor 12 months to redeem and prohibiting the property from being sold for less than two-thirds its appraised value, so altered the remedy as to impair the obligation of the contract. Barnitz v. Beverly, 163 U. S. 118, 16 Sup. Ct. 1042, 41 L. Ed. 93. It is true that a law will not ordinarily be declared unconstitutional on the objection of one whose interests are not injuriously affected by the objectionable features. If the accusations against the act in question were only those which might be presented by the judgment creditors, whose rights have manifestly been invaded, there might be more difficulty in declaring it invalid. There are, however, exceptions to the general rule which are stated by Judge Cooley to be found in cases "where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others." Cooley, Const. Lim. (4th Ed.) 219. It would, indeed, be a strange anomaly if the statute in question were held valid when attacked by stockholders and invalid when attacked by judgment creditors. Such a construction would lead to endless confusion and injustice. But, as has been seen, the contractual rights of the stockholders have been impaired equally with those of the judgment creditors. It is undoubtedly true that whatever belongs merely to the remedy may be changed as the legislature may direct, but the court cannot believe that this familiar rule is applicable to a law which makes such fundamental changes in the terms of the contract.

The case of Hill v. Insurance Co., 134 U. S. 515, 10 Sup. Ct. 589, 33 L. Ed. 994, is relied on by the plaintiff. The point decided is well stated in the syllabus:

"A state statute which confers upon a judgment creditor of a corporation, when execution on a judgment against the corporation is returned unsatisfied, the power to summon in a stockholder who has not fully paid the subscription of his stock, and obtain judgment and execution against him for the amount so unpaid, in no way increases the liability of the stockholder to pay that amount; and, inasmuch as he was before then liable to an action at law by the corporation to recover from him such unpaid amount at law, as well as to a suit in equity, in common with other similar stockholders, to compel contribution for the benefit of creditors, no substantial right of the stockholder is violated."

It is manifest that the case involved merely a change of remedy. The defendant was liable at law to pay the amount of his subscription for which he had given his notes to the company. Then came the law permitting a judgment creditor to collect the amount due but changing in no way the extent of the liability. The court says:

"His undertaking was to pay each and all of his notes on demand, and it was entirely competent for the legislature, as a regulation of the business and affairs of the company, to give its creditors a new or additional remedy by which this undertaking could be enforced in their behalf—such remedy not increasing the debtor's liability."

That the liability of the defendant has been increased is pointedly illustrated by the fact that whereas under the pre-existing statute the recovery could be for the sum of $16,000 only, the original complaint demands judgment in the sum of $60,200, and there is no doubt that the existing law permits such a recovery. The injustice of such a situation is impliedly conceded by the plaintiff who at the trial voluntarily consented to limit the amount of the recovery to $16,000. In the brief the plaintiff's counsel asks the question:

"What difference does it make to the defendant whether he pays $16,000 to the plaintiff or to the individual creditors of the Interstate Loan & Trust Company?"

The answer is:

None, but it makes a difference of $44,200 whether judgment is entered under the old law or under the new, and this is the proper test to apply when considering the question of the defendant's liability.

The plaintiff, admitting that certain parts of the act, if given a retroactive effect, may be decided to be unconstitutional, contends in the brief as follows:

"The act of January 11, 1899, authorizes a recovery against the defendant to the amount of $60,200. We ask a recovery in this case of about $16,000. Conceding, for the sake of the argument that the statute is unconstitutional in so far as it authorizes a recovery to the full amount of the liability of the defendant, is there any valid reason why the $16,000 that is constitutional cannot be separated from the $60,200 which is unconstitutional, will not the intent of the legislature be carried out thereby?"

The difficulty with this reasoning, as it seems to the court, is that it assumes that there is some provision of the act of 1899 which authorizes a recovery of $16,000. Where is the provision? All former provisions limiting the recovery to the amount of the judgments have by this act been swept away. There is no alternative provision for an action at law in favor of the judgment creditors or by the receiver to recover the amount of their judgments. The provision seems to be mandatory. "The receiver shall immediately institute proceed-

ings against all stockholders to collect * * * the additional lia-
bility of such stockholders equal to the par value of the stock held
by each." The suit is brought under this section of the law and if
the law falls the suit falls with it. There is no other provision au-
thorizing an action at law in favor of the receiver for the amount
of the judgments. The concessions of the receiver cannot affect the
question of the constitutionality of the law. A plaintiff suing under
a void law cannot make it valid by agreeing to receive one-fourth
of the amount demanded. If the law, as a retroactive measure, be
clearly invalid, and the defendant insists upon the point, it is not
easy to see how the court can avoid pronouncing the judgment of in-
validity because the plaintiff consents to make the recovery no more
onerous than it would have been under a former statute which has
been repealed.

It follows, therefore, that the law in question impairs the obliga-
tion of the defendant's contract if construed to act retroactively and,
to that extent, is invalid. The complaint is dismissed.